UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL T. ROBINSON,              )
                                  )
         Plaintiff,               )
                                  )    CAUSE NO. 3:14-CV-1905 RM
     v.                           )
                                  )
BESSIE LEONARD, *et al.*,         )
                                  )
         Defendants.              )

OPINION AND ORDER

Michael T. Robinson, a *pro se* prisoner, filed an amended complaint. DE 28. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, the court must review prisoner complaints pursuant to 28 U.S.C. § 1915A.

Mr. Robinson lists three claims and eight defendants in his complaint. First he alleges that Bessie Leonard, Bruce Lemmon, William Wilson, Howard Morton, Pam James, Jeff Myers, Trish Roberts, and Jonathon Sarkorski denied him access to the courts. Inmates have a First Amendment right to access the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). This isn't an "abstract free-standing right." Lewis v. Casey, 518 U.S. 343, 351 (1996). Rather, "only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006); *see also* In re Maxy, 674 F.3d

658, 661 (7th Cir. 2012) ("Relief for the denial of access to the courts is intended to remedy rights denied in a separate case due to the impediment. . . . [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.") (citation omitted).

Mr. Robinson alleges that the destruction of his computer legal materials created "undue unnecessary delay [and] frustrated litigation [which] interfered with Plaintiff's access [to] the courts burdening his Constitutional rights . . . ." DE 28 at 5. Delay, frustration, interference, and burdening are insufficient to state a claim. There must have been actual injury to a potentially meritorious claim. Marshall and Maxy. Though Mr. Robinson says his post-conviction and civil lawsuits were impacted, he doesn't explain what meritorious claims he was presenting or how they were prejudiced other than by being delayed and made more difficult to effectively litigate. These allegations fall far short, for example, of those presented in Nitz v. Hall, 473 Fed. Appx. 513 (7th Cir. 2012), which didn't state a claim. In Nitz, the plaintiff alleged that prison officials confiscated

> at least four DVDs depicting video surveillance related to his criminal cases. According to the complaint, Nitz informed prison employees that he needed the DVDs to proceed in the pending litigation, but the employees took the DVDs as contraband and refused to provide accurate "shakedown slips" inventorying the number of DVDs taken. As a result of the employees' actions, Nitz says, his petition for review of his state criminal conviction was denied; his civil case in *Nitz v. Harvey* was dismissed; summary judgment was granted for two defendants in Nitz v. Doe; and his social security disability appeal was denied. He further alleged that prison employees intentionally "messed up" legal copies by copying only one side of two-sided documents and refused to provide him with the original materials; that prison grievance officers "refused to investigate" grievances he had filed against prison library staff; and that his former parole officer thwarted his

2

> success in his criminal and civil cases by neither testifying on his behalf nor providing exculpatory evidence.

Id. at 514 (citations omitted).

> He alleged that the prison prevented him from **effectively** litigating actions that were pending, but the right of access protects prisoners from "being shut out of court," Christopher v. Harbury, 536 U.S. 403, 415 (2002); it does not exist to "enable the prisoners . . . to litigate **effectively** once in court," Lewis, 518 U.S. at 354 (emphasis in original).

Id. at 515 (emphasis in original, parallel and string citation omitted). Mr. Robinson doesn't state a claim for a denial of access to the courts.

Second, Mr. Robinson alleges that Bessie Leonard, William Wilson, Howard Morton, Pam James, Jeff Myers, and Jonathon Sarkorski subjected him to unreasonable searches and seizures. He alleges that they searched his computer records and seized his computer files. Mr. Robinson was (and is) a prison inmate. "[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). "Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life." Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995). Though Mr. Robinson alleges that these actions violated prison policies, "[i]n order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege . . . that defendants deprived him of a federal constitutional right . . . ." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006). The violation of a State prison policy isn't a basis for a federal constitutional lawsuit. Mr. Robinson doesn't state a claim for an unreasonable search or seizure.

3

Third, Mr. Robinson alleges that the defendants retaliated against him. To establish a claim of retaliation in violation of the First Amendment, the plaintiff must allege: (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the protected activity motivated the defendant's action. Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012). Prison officials can't retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir.2000). "The First Amendment prohibits threats of punishment designed to discourage future protected speech [when] the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011). However,

> [o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.

Dawes v. Walker, 239 F.3d 489, 493 (2nd Cir. 2001) (citations and quotation marks omitted).

Mr. Robinson alleges that he prepared and filed grievances and lawsuits against staff. A prisoner has a First Amendment right to use the prison grievance process and a First Amendment right of access to the courts – he can't be punished for exercising these

4

rights. Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012). Mr. Robinson alleges that the retaliatory acts taken against him were motivated by his protected activities.

Mr. Robinson sues Bessie Leonard for a series of escalating retaliatory acts beginning in June 2013 and continuing until April 2014 including destroying his computer legal files and firing him from his library job. DE 28 at 9-10 and DE 29-1 at 65-68. He sues Jeff Myers for retaliating against him by destroying his computer legal files and denying him the use of computers for legal work in July and August 2013. DE 28 at 12-13 and 29-1 at 65. He sues Pam James for retaliating against him by destroying his computer legal files in August 2013. DE 28 at 12 and DE 29-1 at 65. He sues Jonathon Sarkorski for retaliating against him by destroying his computer legal files in August 2013. DE 28 at 12-13 and DE 29-1 at 65. He sues Trish Roberts for retaliating against him by transferring him from a privileged housing unit "to a much more dangerous part of the prison" in December 2013. DE 28 at 12 and DE 29-1 at 67. He sues Howard Morton for retaliating against him by refusing to intercede to stop others from retaliating against him. DE 28 at 10-11 and DE 29-1 at 65-91. Each of these allegations states a claim.

Mr. Robinson also alleges that Indiana State Prison Superintendent William Wilson and Indiana Department of Correction Commissioner Bruce Lemmon retaliated against him. Both are alleged to be supervisors whom he contacted about his concerns. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. "Only persons who cause or participate in the violations are responsible." George v. Smith, 507 F.3d 605, 609 (7th Cir.

5

2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009).

> Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). Mr. Robinson hasn't stated a claim against William Wilson or Bruce Lemmon.

Mr. Robinson has stated retaliation claims against six defendants. As relief, he seeks both monetary damages and injunctive relief. Mr. Robinson asks that the court to order that he be transferred back to the Indiana State Prison. Without regard to whether any of the defendants against whom he is proceeding in this case have the authority to order his transfer,

> The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

Westefer v. Neal, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Courts must afford prison officials "wide-ranging deference" in the day-to-day operations of a correctional facility. Bell v. Wolfish, 441 U.S. 520, 547 (1979). Because prison

officials have authority to house an inmate in any correctional facility they deem appropriate, an inmate has no constitutional right to be housed in a particular correctional facility or in the facility of his choosing. *See* Meachum v. Fano, 427 U.S. 215, 224 (1976); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996).

Mr. Robinson also asks the court to issue a permanent injunction requiring that the Indiana State Prison, the Indiana Department of Correction, and Indiana Government agencies be prohibited from retaliating against him, but none of those entities are parties to this lawsuit and none were even accused of having retaliated against him in the past. Finally, he asks that Bessie Leonard and Howard Morton be given new job responsibilities. Even if they are found liable in this case and ordered to pay damages to Mr. Robinson, both of those defendants are employed by the Indiana Department of Correction and it is up to it to decide what (if any) job duties they are assigned. Mr. Robinson can only proceed on claims for monetary damages.

For the foregoing reasons, the court:

(1) GRANTS Michael T. Robinson leave to proceed against Bessie Leonard in her individual capacity for compensatory and punitive damages for retaliating against him from June 2013 to April 2014 by a series of escalating acts including destroying his computer legal files and firing him from his library job because he prepared and filed grievances and lawsuits;

(2) GRANTS Michael T. Robinson leave to proceed against Jeff Myers in his individual capacity for compensatory and punitive damages for retaliating against

him in July and August 2013 by destroying his computer legal files and denying him the use of computers for legal work because he prepared and filed grievances and lawsuits;

(3) GRANTS Michael T. Robinson leave to proceed against Pam James in her individual capacity for compensatory and punitive damages for retaliating against him in August 2013 by destroying his computer legal files because he prepared and filed grievances and lawsuits;

(4) GRANTS Michael T. Robinson leave to proceed against Jonathon Sarkorski in his individual capacity for compensatory and punitive damages for retaliating against him in August 2013 by destroying his computer legal files because he prepared and filed grievances and lawsuits;

(5) GRANTS Michael T. Robinson leave to proceed against Trish Roberts in her individual capacity for compensatory and punitive damages for retaliating against him in December 2013 by transferring him from a privileged housing unit to more dangerous part of the prison because he prepared and filed grievances and lawsuits;

(6) GRANTS Michael T. Robinson leave to proceed against Howard Morton in his individual capacity for compensatory and punitive damages for retaliating against him in by refusing to intercede to stop others from retaliating against him because he prepared and filed grievances and lawsuits;

(7) DISMISSES all other claims;

(8) DISMISSES Bruce Lemmon and William Wilson as parties;

(9) DIRECTS the clerk to transmit the summons and USM-285 for Jeff Myers and Jonathon Sarkorski to the United States Marshals Service along with a copy of the amended complaint (DE 28), memorandum (DE 29), and this order;

(10) DIRECTS the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Jeff Myers and Jonathon Sarkorski; and

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Bessie Leonard, Howard Morton, Pam James, Jeff Myers, Trish Roberts, and Jonathon Sarkorski respond by April 28, 2016, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: February  8 , 2016

    /s/ Robert L. Miller, Jr.
Judge,
United States District Court